## LEE v. NEUMEN, *et al.*

1. A certificate, executed by a buyer of machinery warranted to do a certain amount of work that the machinery was working satisfactorily up to date, did not preclude him from thereafter showing that he was mistaken, and that the machinery did not, in fact, comply with the warranty.

2. Where a buyer of warranted machinery, under an agreement stipulating that six days' possession and use of the machinery should be conclusive evidence that it complied with the warranty, kept and used

such machinery six days, it was competent for an assignee of the purchase money notes and the mortgage given to secure them to waive such stipulation, and agree to take back the machinery if it did not comply with the warranty.

3. Where, in an action of claim and delivery for the possession of machinery and other personal property claimed by plaintiff under a mortgage given by defendant to secure the price of the machinery, it appeared that defendant was entitled to rescind the sale for breach of warranty, and, further, that he had not refused to surrender the machinery to plaintiff upon his demand at or about the time of the institution of the suit, costs were properly awarded against plaintiff.

FULLER, J., dissenting.

(Opinion filed July 2. 1902.)

Appeal from circuit court, Brown county. HON. A. W. CAMPBELL. Judge

Action in claim and delivery by K. O. Lee against Henry Neumen and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

*J. H. McCoy* and *I. O. Curtis,* for appellant.

No appearance made or brief filed for respondents.

CORSON, J.   This is an action in claim and delivery to recover possession of certain threshing machinery and other personal property. Special verdict and judgment in favor of defendants, and the plaintiff appeals. The action was based on a chattel mortgage given by the defendants to secure the payment of notes for about $2,600 given in payment of said threshing machinery. The defendants in their answer set up in substance, that the threshing machinery was purchased by the defendant Henry Neuman, and at the time the same was purchased the plaintiff was acting as the agent of Russell & Co., of whom the machinery was purchased. And the defendants in their answer claim that the engine was warranted to do certain work; that it failed to perform the work as warranted, and that

under and by agreement with the plaintiff, who became the assignee of the said notes and mortgage, the defendant delivered the said machinery to the plaintiff; that at the time this action was commenced the defendants were not in possession of the machinery, but the same was in the possession of the plaintiff. The pleadings are quite lengthy, and we shall not attempt to set them out in full. At the close of the trial the court submitted interrogatories to the jury, which, with their answers, are as follows: "Question 1. Did defendants, or either of them, refuse to turn over and surrender to plaintiff on demand, at or about the time this suit was commenced, the threshing outfit in question? Answer 1. No. Question 2. Was the engine, after it was visited and adjusted by the expert, Albert Timms, capable of doing as good work with proper management as similar engines of other manufacturers? Answer 2, No. Question 3. Was it agreed between K. O. Lee and the defendants, during the time defendants were operating said machine, that plaintiff would buy and take from Russell & Co. the notes and mortgage given for said machine, and that defendants would continue to operate or try to operate said machine for a longer time, they need [not] in case they chose to rescind, return it to the place where they received it, as specified in the contract, but the plaintiff would, in event of its failure to comply with the warranty, send to the defendant's farm and get it? Answer 3. Yes. Question 4. Did defendant Henry Neuman sign Exhibit 11 at or about the time the expert, Albert Timms, left the machine. Answer 4. Yes. Question 5. What was the value of the five horses taken by the sheriff by virtue of the requisition in this action, at the time they were taken, in December, 1899? Answer 5, $500. Question 6. Were the two horses described in the complaint and chattel mortgage as two years old in possession of defendants, or either of them, at the time this action was begun, in

December, 1899? Answer 6. No. Question 7. If you answer 'Yes' to the foregoing question, No. 6, then what was the value of the two horses? Answer 7. ———. Question 8. What was the amount of the notes secured by the mortgage in question, with accrued interest, at the date this suit was begun? Answer 8. $2,618.72 J. F. Jenkins, Foreman."

The plaintiff claims a reversal of the judgment on the following grounds: (1) That it appears upon the face of the record that all of the issues raised by the pleadings were not submitted to or passed upon by the jury. (2) That no defense had been pleaded or found as to a certain note for $250, the purchase price of one Massillon stacker, and that therefore the plaintiff was entitled to judgment on the pleadings for the personal property described in the mortgage. (3) That the court erred in overruling the plaintiff's motion for judgment notwithstanding the special verdict of the jury. (4) That the court erred in rendering judgment that the defendants recover of the plaintiff their costs and disbursements. (5) That the court erred in overruling plaintiff's motion for a new trial. (6) That there is no evidence to sustain or justify the second finding of the jury.

The question as to whether or not there was a rescission of the contract was left to the jury by the court—not in terms, it is true, but as to the facts which would constitute a rescission. It will be noticed that, by the third interrogatory propounded to the jury, they are required to find whether or not there was any change in the agreement between the defendant and the plaintiff after he became the assignee of the mortgage and notes, and that the jury found that there was such a change, and that under the agreement, as changed, the plaintiff agreed that, in case the machinery failed to comply with the warranty, he would send to the defendant's farm and get

it. There seems to have been no issue between the parties as to
the purchase of the machinery, the price to be paid therefor, the terms
of the warranty of the engine, and the execution of the notes and
mortgage. The only issue that seems to have been raised by the
pleadings was as to whether or not the engine complied with the
warranty, and what new agreement, if any there was, between the
plaintiff after he became the owner of the notes and mortgage and
the principal defendant, Henry Neumen. Upon these questions
there seems to have been a large amount of testimony, which is set
out in the record, nearly all of which is conflicting. That the engine
failed to do the work it was warranted to do seems to be clearly es-
tablished by a preponderance of the evidence. That the defendant
Henry Neuman made several attempts to make the engine work suc-
cessfully seems also to be established by a preponderance of the evi-
dence, and these several attempts were made with the consent of
the plaintiff. While the contract between the plaintiff and the de-
fendants is not clearly established, there seems to have been evidence
upon which the jury were warranted in making the third finding.
It seems from the evidence that, before the plaintiff became the own-
er of the notes and mortgage, Russell & Co. sent an expert to ex-
amine the engine, and make such changes thereon as might be deem-
ed necessary, and that after the expert, Albert Timms, had made
some changes in the machinery, the defendant Henry Neuman signed
the following certificate: "James, S. D., Sept. 10th, '99. This is to
certify that the Russell rig bought of K. O. Lee is working satisfac-
torily up to date since Albert Timms fixed it, giving plenty of steam
and power, which it did not do before.    [Signed] H. Neumen."
It is contended on the part of the appellant that the de-
fendant Neumen, after signing this certificate, cannot be
heard to question the condition of the engine thereafter;

but it will be noticed that, while the jury find the said Neumen signed the certificate, they also find that the engine was not capable of doing as good work, with proper management, as similar engines of other manufacture, which was substantially the agreement in the warranty. We are of the opinion that the certificate signed by Neumen was not conclusive upon him, and that, if he subsequently discovered that the engine did not do the work it was warranted to do, it was competent for him to show that fact, notwithstanding his certificate. The certificate amounts to no more than a statement made by the defendant, which he could show was made under a mistake of fact, and which the jury evidently found was made under such mistake.

It is further contended on the part of the appellant that, by the terms of the original contract between the defendant Henry Neumen, and Russell & Co., it was stipulated that, if the defendant Neumen retained and used the property six days, that should be conclusive evidence that the machinery worked in accordance with the warranty, and that the evidence in this case shows conclusively that the said Neuman did use the engine for more than six days without making any complaint as to its condition; but this stipulation seems to have been modified by the agreement between the plaintiff and defendants made subsequently to the plaintiff becoming the owner of the notes and mortgage. We are of the opinion that it was perfectly competent for the plaintiff to waive this stipulation in the warranty after he became the owner of the notes and mortgage, and, under the jury's third finding, it is quite evident that he did so waive it.

The contention of the appellant that it appears that no defense has ever been pleaded or proved as to the $250 note, the purchase price of the Massillon stacker, does not seem to be sustained by

the evidence, or at least it is difficult to understand from the record why this $250 note is not to be treated the same as the other notes given for the machinery. The jury finds that the defendants did not refuse to turn over and surrender to the plaintiff, at or about the time the suit was commenced, the threshing outfit in question, and its finding seems to be sustained by the evidence. Assuming this finding to be true, the court was right in adjudging costs against the plaintiff.

Upon a careful examination of the whole record, we think the order of the court denying a new trial was clearly correct. The judgment of the circuit court and order denying a new trial are affirmed.

FULLER, J., dissenting.